UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WIRELESS ACCESSORY SOLUTIONS, LLC, d/b/a IBOLT – WIRELESS ACCESSORY SOLUTIONS, LLC, <br><br> Defendant. | CASE NO. C15-2024JLR <br><br> ORDER TRANSFERRING CASE TO THE CENTRAL DISTRICT OF CALIFORNIA |

## I.  INTRODUCTION

Before the court are the parties' responses to the court's order to show cause why the court should not transfer Plaintiff National Products, Inc.'s ("NPI") non-patent claims against Defendant Wireless Accessory Solutions, LLC, d/b/a iBolt – Wireless Accessory Solutions, LLC ("iBolt") to the Central District of California pursuant to 28 U.S.C. § 1404(a).  (iBolt Resp. (Dkt. # 28); NPI Resp. (Dkt. ## 31 (redacted), 33 (sealed).)  On

March 23, 2018, the court determined, pursuant to 28 U.S.C. §§ 1400(b) and 1406(a), that venue of NPI's patent claim against iBolt was improper in this district and the claim should be transferred to the Central District of California. (Order (Dkt. # 27) at 7-17, 19.) In the same order, the court ordered the parties to show cause why the court should not also transfer NPI's non-patent claims to the Central District of California pursuant to 28 U.S.C. § 1404(a). (Order at 17-19.) The court deferred transferring NPI's patent claim until after it reviewed NPI's and iBolt's responses to the court's order to show cause. (*Id.* at 18-19.) Having reviewed the parties' responses, the court now DIRECTS the Clerk to transfer the entire case—both NPI's patent and non-patent claims against iBolt—to the Central District of California for the reasons stated herein.

## II. BACKGROUND

iBolt is a limited liability corporation organized and existing under the laws of the State of Utah. (15-1984[1] 2d Brassard Decl. (Dkt. # 112) ¶ 3.) iBolt's principal place of business is Arcadia, California. (*Id.*) iBolt has no property, infrastructure, inventory, or other physical presence in the Western District of Washington. (*Id.* ¶ 4.) iBolt also has no employees in the Western District of Washington and provides no localized customer support or targeted marketing efforts here, nor does it otherwise interact in a targeted way with existing or potential customers in the Western District of Washington. (*Id.* ¶¶ 5-6.) iBolt makes no representations that it has any presence in the Western District of

---

[1] Previously, this action was consolidated with several other actions for purposes of conducting discovery and claims construction only under *National Products, Inc. v. Arkon Resources, Inc.*, No. C15-1984JLR (W.D. Wash.). Accordingly, the court prefaces any references to the record from the consolidated case with "15-1984."

Washington. (*Id.* ¶ 5.) Any records, documents, or information related to the subject matter of this litigation, which are in iBolt's possession, custody, or control are located at iBolt's headquarters in Arcadia, California. (*Id.* ¶ 7.)

On December 29, 2015, NPR filed a complaint against iBolt in the Western District of Washington alleging patent and trademark claims, along with a variety of state law claims. (*See* Compl. (Dkt. # 1).) On September 19, 2017, the court held a claims construction hearing (*see* 15-1984 9/19/17 Min. Entry (Dkt. # 95)) and subsequently issued a claims construction order (15-1984 CC Order (Dkt. # 96)).

On November 30, 2017, iBolt filed a motion to dismiss or transfer NPI's patent claim based on improper venue under 28 U.S.C. §§ 1400(b) and 1406(a). (*See* 15-1984 MTD (Dkt. # 111).) On March 23, 2018, the court granted iBolt's motion and determined that NPI's patent claim should be transferred to the Central District of California. (Order at 7-17, 19.) The court, however, deferred transferring NPI's patent claim until after the court reviewed the parties' responses to the court's order to show cause why it should not also transfer NPI's non-patent claims pursuant to 28 U.S.C. § 1404(a). (Order at 17-19.) The court now considers whether to transfer NPI's non-patent claims.

### III. ANALYSIS

**A. Standards for Considering a Transfer of Venue Under 28 U.S.C. § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold question is whether the plaintiff

could have originally brought the action in the forum proposed for transfer. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Once this question is resolved, district courts have discretion to transfer venue on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In determining whether to transfer an action, the district court must weigh a number of different "case-specific factors." *Id*. These factors include both public and private factors. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *see Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "The district court . . . must weigh in the balance . . . those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Org.*, 487 U.S. at 30 (quoting 28 U.S.C. § 1404(a)). On the other hand, private factors generally concern the relative impact of the venue on the private parties participating in the litigation, the parties' access to evidence, the availability of compulsory process, "and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). These private, convenience factors may include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (footnotes omitted). The court now considers the relevant public and private factors.

## B. Public Factors and the Interest of Justice

The interest of justice is the most important consideration in weighing whether to transfer a case. *See Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991) (citing *Medtronic, Inc., v. Am. Optical Corp.*, 337 F. Supp. 490, 495-97 (D. Minn.1971)). "Consideration of the interest of justice . . . 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986)). Here the court identifies two relevant public factors: (1) judicial efficiency, *see id.*, and (2) the "local interest in having localized controversies decided at home" and deciding cases "where the claim arose," *Decker Coal*, 805 F.2d at 843.

### 1. Judicial Efficiency

The public interest factor of judicial efficiency includes "trying related litigation together." *Avritt v. Reliastar Life Ins. Co.*, No. C06-1435RSM, 2007 WL 666606, at *3 (W.D. Wash. Feb. 27, 2007). "[T]he court should give great weight" to the "desire to avoid multiplicity of litigation from a single transaction." *Gerin v. Aegon USA, Inc.*, No. C06-5407 SBA, 2007 WL 1033472, at *6 (N.D. Cal. Apr. 4, 2007) (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). Indeed, "[c]oncerns over judicial efficiency are paramount" in weighing whether to transfer a case. *Starbucks Corp. v. Wellshire Farms*, Inc., No. C13-1170-MJP, 2013 WL 6729606, at *5 (W.D. Wash. Dec. 18, 2013).

//

In its order granting iBolt's venue motion, the court noted that NPI acknowledged that "many of the same products implicated under NPI's [n]on-[p]atent counts are also accused of infringing the asserted patent." (Order at 17 (citing 15-1984 Resp. at 10 and 15-1984 FAC (Dkt. # 47) ¶¶ 21, 30).) The court therefore concluded that "[i]t would seem absurd . . . to sever the patent infringement claim and transfer it . . . while retaining the [other] counts" and would likely lead to "intolerable judicial inefficiency" and "possible inconsistent results." (*Id.* (quoting *Lighting Sys. v. Int'l Merch. Assoc., Inc.*, 464 F. Supp. 601, 606 (W.D. Pa. 1979)).) Now, however, when faced with the possibility of transfer, NPI argues that its state and federal trademark claims "are legally and factually independent" from its patent claim and transferring the non-patent claims "would not serve the cause of judicial efficiency." (NPI Resp. at 1.) This self-serving turnabout undermines NPI's credibility.

Further, a review of NPI's first amended complaint persuades the court that the claims—as NPI first asserted—overlap factually. (*See generally* 15-1984 FAC.) The court has already determined that venue of NPI's patent claim is improper in this district and that the claim must be transferred to the Central District of California. (*See* Order at 7-17, 19.) Further, there is no dispute that there is personal jurisdiction over iBolt in the Central District of California and that venue for all of NPI's claims—both patent and non-patent—is proper there. Thus, the only way to avoid the "intolerable judicial inefficiency" of holding two trials over related claims is to transfer all of NPI's claims to the Central District of California. The court therefore concludes that the public interest

factor of judicial efficiency weighs heavily in support of transferring NPI's non-patent claims to the Central District of California.

2. <u>The Local Interest in Having Localized Controversies Decided at Home and Deciding Cases Where the Claim Arose</u>

Public policy factors include the "local interest in having localized controversies decided at home" and deciding cases "where the claim arose." *Decker Coal*, 805 F.2d at 843. Additionally, states have an interest in providing a forum for their injured residents. *Hansen v. Combined Transp., Inc.*, No. C13-129RSL, 2013 WL 5969863, at *4 (W.D. Wash. Nov. 7, 2013). In this case, despite the fact that NPI is a Washington company (15-1984 FAC ¶ 1), and despite NPI's assertion that its "trademark claims arise out of [iBolt's] conduct in . . . Washington" (NPI Resp. at 5), the court is not convinced that Washington is "where the claim arose," *see Decker Coal*, 805 F.2d at 843. Indeed, iBolt's principal place of business is in the Central District of California and all records, documents, or information relating to the subject matter of this litigation, which are in iBolt's possession, custody, or control, are located at iBolt's headquarters in California. (15-1984 2d Brassard Decl. ¶¶ 3, 7.) Although NPI alleges that iBolt "committed tortious actions . . . in this judicial district and the State of Washington," NPI also alleges that iBolt "distributes its infringing products throughout the United States." (15-1984 FAC ¶ 7; *see also id.* ¶ 30 (alleging that iBolt "sells" and "also distributes the Bizmount products . . . throughout the United States, including this district and the State of Washington").) The allegedly infringing products at issue in this case originated with iBolt in California, and were distributed from there throughout the United States. (*See id.*

¶¶ 7, 30.) Based on these facts, the court concludes that the claims at issue arose in California, not Washington. Thus, California has an interest in resolving this controversy "where it arose" and at "home." *See Decker Coal*, 805 F.2d at 843. Nevertheless, NPI felt the effects of iBolt's allegedly wrongful conduct in Washington, and thus, Washington also retains an interest in providing a forum for its injured residents, such as NPI. *See Hansen*, 2013 WL 5969863, at *4. The court, therefore, concludes that this factor is neutral.

**C.     Private or Convenience Factors**

In addition to the relevant public factors, the court also considers the private factors listed in *Jones*, which are based predominantly on the convenience of the parties and witnesses. *See Jones*, 211 F.3d at 498-99.

1.     <u>The State that is Most Familiar with the Governing Law</u>

The first relevant *Jones* factor is the state that is most familiar with the governing law.[2] *See id.* at 498. NPI asserts two of its non-patent claims under federal law: (1) federal trade dress infringement under 15 U.S.C. § 1114, and (2) federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a). (15-1984 FAC ¶¶ 29-49.) Both federal courts in the Western District of Washington and the Central District of California will have equal familiarity with the law governing these federal claims. However, NPI asserts four claims under Washington law: (1) common law trade dress infringement, (2) unfair business practices under Washington's Consumer

---

[2] This is not a contract case and so the first *Jones* factor—the location where the relevant agreements were negotiated and executed—is not relevant here. (*See* NPI Resp. at 6, n.3.)

Protection Act ("CPA"), RCW ch. 19.86, (3) common law unfair competition, and (4) common law unjust enrichment.  (15-1984 FAC ¶¶ 50-62.)  The court recognizes that "federal courts are equally equipped to apply distant state laws when the law is not complex."  *Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2017 WL 4758761, at *11 (W.D. Wash. Oct. 20, 2017), *reconsideration denied*, No. 17-0217JLR, 2018 WL 581071 (W.D. Wash. Jan. 25, 2018) (concluding that counts alleged under Washington's CPA and common law were not complex) (citing *Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09cv2367 BEN (RBB), 2010 WL 2754249, at *3 (S.D. Cal. July 9, 2010) (stating that a federal court in Texas would be equally adept at applying California law related to unfair competition claims)).  NPI's state law claims are not complex; neither is the state law governing those claims unsettled.  Accordingly, the court concludes that both district courts are equally equipped to handle this case, and this factor is therefore neutral.  *See Jinni Tech*, 2017 WL 4758761, at *11; *see also Inlandboatmen's Union of the Pac. v. Foss Mar. Co.*, No. C14-1403JLR, 2015 WL 64933, at *3 (W.D. Wash. Jan. 5, 2015).

    2. <u>NPI's Choice of Forum</u>

The next *Jones* factor is the plaintiff's choice of forum.  *See Jones*, 211 F.3d at 498.  NPI chose this forum, and NPI is incorporated in Washington and has its principal place of business here.  (15-1984 FAC ¶ 1.)  A plaintiff's choice of forum "receives substantial deference" and so there must be a "strong showing" to upset this factor.  *See Jinni Tech*, 2017 WL 4758761, at *11 (citing *Decker Coal*, 805 F.2d at 843.  The court concludes that this factor weighs against transfer.

### 3. The Parties' Respective Contacts with the Forum and Contacts Related to the Plaintiff's Cause of Action in the Chosen Forum

The court considers the next two *Jones* factors together—the parties' respective contacts with the forum and the parties' contacts related to the plaintiff's cause of action in the chosen forum—because the factors overlap. *See Jones*, 211 F.3d at 498. The first of these factors focuses on the parties' contacts with either forum. *Jinni Tech*, 2017 WL 4758761, at *11. The parties' respective contacts with each forum are evenly divided. As noted above, iBolt is a limited liability company organized under the laws of Utah with its principal place of business is the Central District of California. (*See* 15-1984 2d Brassard Decl. ¶ 3.) Any records, documents or information relating to the subject matter of this litigation, which are in iBolt's possession, custody, or control are located at iBolt's headquarters in Arcadia, California. (*Id.* ¶ 7.) iBolt maintains that it has no presence in Washington State—no property, infrastructure, inventory, other physical presence, or employees. (*Id.* ¶¶ 4-6.) On the other hand, NPI is a Washington corporation with is headquarters are in Seattle. (15-1984 FAC ¶ 1.) NPI's business activities originate from Seattle, including its product design, manufacture, marketing, and sales, as well as the development, prosecution, and promotion of the asserted trademark. (NPI Resp. at 5.) Thus, iBolt's contacts are almost exclusively in the Central District of California and NPI's are almost exclusively in the Western District of Washington.

Nevertheless, NPI maintains that all of its "contacts relating to the trademark claims" are within this forum. (NPI Resp. at 5.) NPI argues that its trademark claims "arise out of iBolt's conduct in the State of Washington." (NPI Resp. at 5 (citing 15-

1984 FAC ¶¶ 7, 30, 56).) NPI's first amended complaint indeed recites that iBolt "has engaged in business activities in . . . the State of Washington, and has committed the tortious acts complained of in . . . the State of Washington . . . ." (FAC ¶ 7.) However, the first amended complaint also states that iBolt "distributes its infringing products throughout the United States . . . ." (*Id.*; *see also id.* ¶ 30 ("[iBolt] sells the Bizmount products from its website and from the Amazon.com online retail platform to consumers throughout the United States . . . .").) Thus, NPI alleges that the wrongful conduct at issue here occurred throughout the United States and not just in Washington. Further, because iBolt's home state is California and its home district is the Central District of California, its alleged wrongful conduct logically occurred there as well. Thus, because the parties' contacts with the two forums and NPI's contacts related to its non-patent claims are evenly split between the two districts, the court concludes that both of these factors are neutral.

4. The Differences in the Costs of Litigation in the Two Forums and Ease of Access to Sources of Proof

The relative cost analysis focuses primarily on the venue's proximity to witnesses. *See Silver Valley Partners, LLC. v. De Motte*, No. C05-5590RBL, 2006 WL 2711764, at *6 (W.D. Wash. Sept. 21, 2006). When considering the difference in cost between two forums, courts disfavor transferring venue when "transfer would merely shift rather than eliminate" costs and inconvenience. *Decker Coal*, 805 F.2d at 843. The ease of access to sources of proof focuses on the location of witnesses and documentary evidence. *See Jinni Tech*, 2018 WL 4758761, at *12. However, "the ability to transfer documents

electronically with relative ease and little expense may lessen the importance of this factor with respect to documentary evidence." *Id.* Thus, the focus of both of these factors is primarily on the witnesses. *See id.*

iBolt's witnesses and documentary evidence are located exclusively in California (15-1984 2d Brassard Decl. ¶ 7), and NPI's "evidence and potential party witnesses . . . are located in Washington" (NPI Resp. at 6 (citing McMichael Decl. ¶ 5, Ex. C)). Thus, NPI argues that differences in the costs of litigation and the ease of access to sources of proof "are, at worst, neutral and do not support transfer." (*Id.*)

The court, however, evaluates these factors differently. As discussed above, NPI's patent claim and NPI's remaining federal trademark and state law claims overlap factually. (*See* Order at 17 (citing 15-1984 Resp. at 10 and 15-1984 FAC (Dkt. # 47) ¶¶ 21, 30)); *see also supra* § III.B.1. NPI's patent claim, however, must be transferred to the Central District of California because venue is improper here. (*See* Order at 7-17.) Thus, unless NPI's non-patent claims are transferred, the parties will need to depose many witnesses twice in separate litigation in California and Washington and also may need to call many of the same witnesses at two trials. The costs involved in litigating two factually related cases in two different jurisdictions and the inconvenience to witnesses in having to be deposed and potentially to give testimony in two different cases in two separate jurisdictions significantly outweighs any inconvenience caused by transfer of the non-patent claims. Indeed, many of NPI's witnesses will already have to travel to California and the parties will have to access sources of proof in Washington to address NPI's patent claim in California. Thus, there is little, if any, added inconvenience to

witnesses or difficulty in accessing sources of proof if NPI's non-patent claims are transferred there as well. The court concludes that these factors weigh significantly in favor of transfer.

### 5. The Availability of Compulsory Process

The last *Jones* factor is the availability of compulsory process. *Jones*, 211 F.3d at 499. NPI argues that at least two non-party witnesses reside in Washington and thus could not be compelled to attend trial in the Central District of California. (NPI Resp. at 5-6.) This factor, however, looks only to the availability of compulsory process to compel unwilling non-party witnesses to attend trial. *See id.*; *see also ACTV8 LLC v. Media Gen. Inc.*, No. CV114961GAFMANX, 2011 WL 13220728, at *6 (C.D. Cal. July 13, 2011). NPI presents no evidence that the two non-party witnesses it cites, who reside in this district, would be unwilling to travel to the Central District of California to testify at trial. (*See generally* Dkt.) This factor is either neutral or given little weight where there is no evidence that the witnesses at issue would be unwilling to appear in the transferee court. *See id.* (citing *Selfhelpworks.com, Inc. v. 1021018 Alberta Ltd.*, No. 10-172, 2010 WL 5514690, at *3 n.1 (S.D. Cal. Dec. 23, 2010)); *see also Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) ("When no witness'[s] unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor.").

**D.    Balancing the Public Interest and Private Factors**

Balancing the above public and private factors, the court concludes that transfer of the non-patent claims to the Central District of California is appropriate. The only

private or convenience factor that weighs against transfer is NPI's choice of forum in the Western District of Washington. *See supra* § III.C.2. On the other hand, both the differences in the costs of litigation in the two forums and the ease of access to sources of proof weigh in favor of transfer. *See supra* § III.C.4. All of the remaining convenience factors are neutral. *See supra* §§ III.C.1, 3, 5. Of the relevant public interest factors, the "local interest in having localized controversies decided at home" and in deciding cases "where the claim arose" is neutral. *See supra* § III.B.2. However, the public interest in judicial efficiency weighs heavily in favor of transfer to the Central District of California. *See supra* § III.B.1. As discussed above, concerns over judicial efficiency are "paramount," *Starbucks Corp.*, 2013 WL 6729606, at *5, and should be "given great weight," *Gerin*, 2007 WL 1033472, at *6. On balance, the court finds that transfer of NPI's non-patent claims to the Central District of California is warranted and outweighs NPI's choice of forum in this district.

## IV. CONCLUSION

On March 23, 2018, the court granted iBolt's motion to transfer NPI's patent claim to the Central District of California pursuant to 28 U.S.C. §§ 1400(b) and 1406(a). (*See generally* Order.) The court, however, deferred the transfer of NPI's patent claim until it could evaluate the parties' responses to its order to show cause why the court should not also transfer NPI's non-patent claims pursuant to 28 U.S.C. § 1404(a). As described above, the court has reviewed the parties' responses and evaluated the appropriate factors in considering the transfer of NPI's non-patent claims to the Central District of California. The court concludes that the relevant factors weigh in favor of

transfer of NPI's non-patent claims. Thus, the court concludes that it should transfer all of NPI's claims against iBolt—both the patent and non-patent claims—to the Central District of California. Accordingly, the court DIRECTS the Clerk to transfer this case to the Central District of California.

Dated this 9th day of April, 2018.

JAMES L. ROBART
United States District Judge